**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LEE MARSH on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **Case No. 18-cv-08330** |
| **-against-** | |
| | **Honorable Andrea R. Wood** |
| **UNITED MOTORS LTD. d/b/a LIBERTY AUTO PLAZA,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR APPROVAL OF SETTLEMENT, FOR APPOINTMENT
OF SETTLEMENT ADMINISTRATOR, AND FOR APPROVAL
OF SERVICE AWARDS AND ATTORNEYS' FEES AND COSTS**

Douglas M. Werman (dwerman@flsalaw.com)
Maureen A. Salas (msalas@flsalaw.com)
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for Plaintiff

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................... 1

    **A.**   Nature of the Claims ................................................................... 1

    **B.**   Discovery and Motion Practice .................................................. 2

    **C.**   Settlement History ...................................................................... 3

III.    SUMMARY OF THE SETTLEMENT TERMS .................................... 3

    **A.**   Monetary Awards And Release Of Claims .................................. 3

    **B.**   Settlement Administration And Distribution ............................... 6

IV.     ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS ............................................... 7

V.      THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE .............................................................. 8

    **A.**   The Proposed Settlement Is The Product Of Contested Litigation ..................... 9

    **B.**   The Proposed Settlement Reflects A Fair And Reasonable Resolution Of A *Bona Fide* Dispute Between The Parties ........................................ 10

**1.** ................................................. A *Bona Fide* Dispute Between the Parties Existed Over Liability ................................................................................................. 10

**2.** .................................................................The Proposed Settlement is Fair and Reasonable ........................................................................................... 10

                i.      The Settlement Was Fairly and Honestly Negotiated ................... 11

                ii.     The Ultimate Outcome of the Litigation was Unknown ............... 11

                iii.    The Value of the Settlement is Significant ................................... 11

                iv.     Plaintiffs' Attorneys and Named Plaintiffs Support the Settlement ................................................................................... 12

VI.     THE REQUESTED SERVICE AWARD SHOULD BE APPROVED ...................... 13

VII.    THE PAYMENT OF PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES EQUAL TO $66,500.00 SHOULD BE APPROVED AND PLAINTIFFS'

**LITIGATION EXPENSES IN THE AMOUNT OF $603.86 SHOULD BE APPROVED** ................................................................................... **14**

    **A.**    Analysis of the Market for Legal Services Supports Plaintiffs' Request ............. 16

    **B.**    The Risk of Non-Payment Supports the Requested Attorneys' Fee Award ......... 17

    **C.**    The Results and the Benefits Conferred Upon the Plaintiffs Justify the Requested Award ........................................................................................ 18

    **D.**    Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check ................................................................................ 20

    **E.**    Plaintiff's Litigation Expenses .......................................................................... 21

**VIII.**    **CONCLUSION** ....................................................................................... **21**

# **TABLE OF AUTHORITIES**

### **Cases**

*Bainter v. Akram Investments, LLC*,
    No. 17 C 7064, 2018 WL 4943884 (N.D. Ill, Oct. 9, 2018) ........................................ 8, 11

*Beatty v. Capital One Fin. Corp.*,
    No. 12 cv 434 (N.D. Ill. Dec. 13, 2012) ........................................................... 8

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980) ....................................................................... 14, 15

*Bozak v. FedEx Ground Package Sys., Inc.*,
    11-cv-738, 2014 WL 3778211 (D. Conn. July 31, 2014) ................................. 8

*Briggs v. PNC Financial Services Group, Inc.*,
    15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 24, 2016) ............................ 14, 15, 17

*Brooklyn Savings Bank v. O'Neil*,
    324 U.S. 697 (1945) ............................................................................. 9

*Burns v. Respite Care/Care in the Home, Inc.*,
    1:17-cv-917 (N.D. Ill. March 1, 2018) ............................................................. 8

*Butler v. Am. Cable & Tel., LLC*
    No. 09 Civ. 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) ......................... 9

*Campbell v. Advantage Sales & Marketing LLC*
    No. 1:09-cv-1430, 2012 WL 1424417 (S.D. Ind. April 24, 2012) ................... 15

*Castillo v. Noodles & Co.*
    No. 16-cv-030306, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) .................. 8, 14, 15

*Dillworth v. Case Farms Processing, Inc.*
    No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ................... 12, 19

*Espenscheid v. Direct Sat USA, LLC*
    688 F.3d 872 (7th Cir. 2012) ....................................................................... 13

*Florin v. Nationsbank of Ga. N.A.*,
    34 F.3d 560 (7th Cir. 1994) ................................................................. 15, 16

*Furman v. At Home Stores LLC*,
    No. 1:16-cv-08190 (N.D. Ill. May 1, 2017) .................................................. 8

*Gaskill v. Gordon*
    942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) .......... 16

iii

*Genesis Healthcare Corp. v. Symczyk,*
  133 S. Ct. 1523 (2013) ............................................................................... 7

*Goldberger v. Integrated Res., Inc.*
  209 F.3d 43 (2d Cir. 2000) ......................................................................... 16

*Grosscup v. KPW Management, Inc.,*
  No. 1:16-cv-06501 (N.D. Ill. May 25, 2018) ................................................. 8

*Heekin v. Anthem, Inc.*
  No. 05 Civ. 1908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ..................... 20

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) .................................................................................. 16

*In re Amino Acid Lysine Antitrust Litig.*
  No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) ........................ 16

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) ........................................................ 16

*In re Cendant Corp. PRIDES Litig.*
  243 F.3d 722 (3d Cir. 2001) ...................................................................... 15

*In re Dairy Farmers of Am., Inc.*
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ............................................................ 20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F. 3d 283 (3d Cir. 1998) ..................................................................... 17

*In re Synthroid Mktg. Litig.*
  325 F.3d 974 (7th Cir. 2003). .............................................................. 15, 17

*In re Trans Union Corp. Privacy Litig.*
  No. 00 Civ. 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ....................... 20

*Isby v. Bayh,*
  75 F. 3d 1191 (7th Cir. 1996) .................................................................... 13

*Kaplan v. Houlihan Smith & Co.*
  No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ..................... 15

*Kirchoff v. Flynn,*
  786 F. 2d 320 (7th Cir. 1986) .................................................................... 17

*Knox v. The Jones Group*
  No. 15-cv-1738 SEB-TAB, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017) ........ 14

*Koszyk v. Country Fin.*,
    No. 16 C 3571, 2016 WL 5109196 ............................................................................ 14, 15

*Lukas v. Advocate*
    No. 1:14-cv-2740, D.E. 150 (N.D. Ill. June 29, 2016) ..................................................... 14

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ................................................................................ 8, 9

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*
    834 F.2d 677 (7th Cir.1987) ................................................................................... 12

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................................................... 18

*Nesbitt v. 5 West Hubbard Corp.*,
    Case No. 18-cv- 2644, Order Approving Settlement ¶ 15, ECF No. 33 (Wood, J.) ..... 8, 13

*Prena v. BMO Fin. Corp.*,
    No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ................................. 8, 15

*Primax Recoveries, Inc. v. Sevilla*
    324 F.3d 544 (7th Cir. 2003) ................................................................................... 14

*Ramah Navajo Chapter v. Babbitt*,
    50 F. Supp. 2d 1091 (D.N.M. 1999) ......................................................................... 19

*Reyes v. Buddha-Bar NYC*,
    No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS, 2009 WL 5841177 (S.D.N.Y. May 28,
    2009) .................................................................................................................... 14

*Roberts v. Apple Sauce, Inc.*
    No. 3:12-cv-830, 2014 WL 4804252 (N.D. Ind. September 25, 2014) ........................... 9

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
    4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ....................................... 19

*Schulte v. Fifth Third Bank*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................................ 20

*Skelton v. G.M. Corp.*
    860 F.2d 250 (7th Cir. 1988) ................................................................................... 15

*Soto v. Wings R Us Romeoville, Inc.*,
    No. 15 C 10127, 2018 WL 1875296 (N.D. Ill. April 16, 2018) ........................... 8, 11, 13

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ....................................................................... 14, 17, 18

v

*Swartz v. D-J Eng'g, Inc*
    2016 WL 633872, 2016 U.S. Dist. LEXIS 20017 (D. Kan. Feb. 17, 2016) .................. 10

*Taubenfeld v. Aon Corp.,*
    415 F.3d 597 (7th Cir. 2005) ..................................................................................... 17, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
    396 F.3d 96 (2d Cir. 2005) ............................................................................................ 15

*Watson v. BMO Financial Corp. and BMO Harris Bank, N.A.*
    No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) .................................................................. 8

*Williams v. Rohm & Haas Pension Plan*
    658 F.3d 629 (7th Cir. 2011) ........................................................................................ 20

*Wong v. Accretive Health, Inc.*
    773 F.3d 859 (7th Cir. 2014) ................................................................................... 12, 15

*Woods v. New York Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982) .......................................................................................... 8

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. ....................................... 1, 9, 10, 12

Illinois Minimum Wage Law, 820 ILCS 105/1 et. seq. ............................................... 1

**Other Authorities**

4 Newberg on Class Actions § 11.38 ........................................................................... 16

## I.    INTRODUCTION

Plaintiff Lee Marsh ("Named Plaintiff"), individually on behalf of himself, the Opt-in

Plaintiffs ("Opt-In Plaintiffs"), and the Settlement Class Members ("Settlement Class Members")

(collectively "Plaintiffs"), and Defendant United Motors LTD. d/b/a Liberty Auto Plaza

("Defendant"), have reached a Settlement in the above-captioned lawsuit (the "Action").[1]

Because the Settlement is a fair and reasonable resolution of a *bona fide* dispute between the

Parties, Plaintiff requests that the Court enter the proposed Order, attached as Exhibit 2,

approving the Parties' Settlement. Defendant does not oppose entry of the Proposed Order.

Plaintiff also asks, consistent with the Parties' Settlement, that the Court appoint

Analytics Consulting LLC as the third-party Settlement Administrator. Further, Plaintiff seeks

the Court's approval of the following payments: (i) a Service Award for the Named Plaintiff, not

to exceed $5,000; (ii) Plaintiffs' Attorney's Fees in the amount of $66,500.00; and (iii) Plaintiffs'

reasonably incurred Costs in the amount of $603.86.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Nature of the Claims

On December 19, 2018, Named Plaintiff filed this Action in the United States District

Court for the Northern District of Illinois, on behalf of himself and others similarly situated,

alleging that Defendant United Motors Ltd. d/b/a Liberty Auto Plaza, violated the Fair Labor

Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and the Illinois Minimum Wage Law, 820

ILCS 105/1 et seq. ("IMWL"), by failing to pay Plaintiff and all other similarly situated

employees their earned minimum wages.  Exhibit 3, Declaration of Maureen Salas Decl. ¶ 10.

---

[1]    The Settlement is memorialized in the Joint Stipulation of Settlement ("Joint Stipulation" or "Settlement"), attached as Exhibit 1. All capitalized terms are defined in the Settlement.

Plaintiff alleged that Defendant paid him and other similarly-situated commissioned sales representatives pursuant to a draw against commission compensation agreement and that in some work weeks during the prior three years, this compensation structure resulted in Plaintiff and other commissioned sales representatives being paid less than the applicable minimum wage. Ex. 3, Salas Decl. ¶ 11.

Plaintiff sought unpaid minimum wages and an additional, equal amount as liquidated damages for Plaintiff and the class of similarly-situated employees he seeks to represent, unpaid minimum wages and statutory penalties pursuant to the formula set forth in the IMWL, and reasonable attorneys' fees and costs incurred as provided by both the FLSA and IMWL. *Id.*, ¶ 12.

Defendant denied Plaintiff's allegations, denied that the case was appropriate for class treatment, and asserted certain affirmative defenses. Ex. 3, Salas Decl. ¶ 13.

The Parties vigorously litigated this case, and some of the motion practice, discovery, and settlement history is detailed below.

### B.     Discovery and Motion Practice

On February 12, 2019, Plaintiff filed his unopposed motion for an Order authorizing notice of the Action to be provided to similarly-situated persons, pursuant to the notice provisions of the FLSA. ECF No. 20.  The Court granted this Motion on February 19, 2019. ECF No. 25. Pursuant to the Court's Order, Defendant provided Plaintiff's counsel with an Excel spreadsheet containing contact information regarding potential opt-in plaintiffs, and Plaintiff's counsel mailed Notice and Consent Forms to each potential opt-in plaintiff. Ex. 3, Salas Decl. ¶ 14.  Eight additional individuals joined the FLSA claims in this case during the Notice Period. *Id*.

On March 11, 2019, the Parties served their Mandatory Initial Discovery Responses on

each other, and Defendant produced 106 pages of documents to Plaintiffs. Ex. 3, Salas Decl. ¶ 15.

Defendant served Interrogatories and Document Requests on Named Plaintiff on April 19, 2019.

Plaintiff served Interrogatories and Document Requests on Defendant on May 1, 2019. *Id.* On

May 20, 2019, Plaintiff served written responses to Defendant's discovery and served a production

of documents on Defendant. *Id.* Defendant produced over 1,000 pages of documents and multiple

spreadsheets in response to Plaintiff's discovery requests. *Id.*

### C.     Settlement History

On May 24, 2019, the case was referred to Magistrate Judge Rowland for purposes of

holding a settlement conference, and all discovery deadlines were stayed. ECF No. 33. Judge

Rowland set a settlement conference for August 21, 2019. ECF No. 37. Plaintiff sent a

settlement letter to Defendant on July 31, 2019, which included Plaintiff's damages analysis, and

Defendant served its response on August 14, 2019. Ex. 3, Salas Decl. ¶ 16.

The Parties reached a settlement at the August 21, 2019, settlement conference. ECF No.

39.

### III.     SUMMARY OF THE SETTLEMENT TERMS

### A.     Monetary Awards And Release Of Claims

Defendant has agreed to make the following payments to resolve this action: (i) $190,000

for Settlement Payments to the Named Plaintiff, the Opt-in Plaintiffs, and Settlement Class

Members, including a Service Award to Named Plaintiff and Plaintiff's Counsel's Attorneys'

Fees and Costs; (ii) Settlement Administration costs not to exceed $5,000; and (iii) the

employer's share of applicable payroll tax on the wage portion of the Settlement Payments. Ex.

1, Stipulation §§ 1(e), 5, 8(e). The Settlement Class Members include all persons identified in the

data produced by Defendant before July 31, 2019 who worked for Defendant as a sales

representative between December 19, 2015 and December 18, 2018, and who had not previously

joined the litigation as an Opt-in Plaintiff. [2]  Ex. 1, Stipulation § 1(k).

From the $190,000 Defendant will deposit into the Settlement Account, $66,500.00 will be allocated to Plaintiffs' Counsel's Attorneys' Fees; $603.86 will be allocated to Plaintiffs' Costs; and $5,000 will be allocated for a Service Awards to the Named Plaintiff.  *Id*., § 5.  The "Net Settlement Amount" represents the settlement proceeds that remain after the above identified deductions are taken from the Settlement Account.  The ratable shares of the Net Settlement Amount, estimated to equal $117,896.14, available to the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members will be calculated as follows:

- For each pay period during which the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members worked as Sales Representatives for Defendant during the Class Period, Plaintiff's Counsel determined the minimum wage damages for each individual by

  - calculating the actual rate of pay for each work week by dividing the total compensation paid per work week by the total hours worked per work week;

  - total compensation per work week equals all wages paid for work performed in the work week preceding the week in which it was paid;

  - total number of hours worked per week by each individual was presumed to be 49;

  - for work weeks in which an individual's actual rate of pay was less than the applicable minimum wage rate, the difference between the actual rate

---

[2]  A list of all individuals meeting the definition of Settlement Class Members, which includes 52 persons, is attached to the Joint Stipulation of Settlement as Attachment B.

and the applicable minimum wage was multiplied by the total hours

worked in that work week to compute the Owed Minimum Wages for each

work week;

- an amount equal to the Named Plaintiff's and Opt-in Plaintiff's Owed

  Minimum Wages equals the amount of Liquidated Damages owed to them

- for the Named Plaintiff and the Opt-in Plaintiffs, their Owed Minimum

  Wages plus Liquidated Damages equals their "Gross Damages;"

- for Settlement Class Members, their Owed Minimum Wages equals their

  "Gross Damages."

- The ratable shares of the Net Settlement Amount for the Named Plaintiff, Opt-in

  Plaintiffs, and Settlement Class Members were determined by dividing each

  individual's Gross Damages (the numerator) by the total of all Gross Damages for

  all individuals (the denominator). The result is each individual's Pro Rata Factor.

  The Pro Rata Factors for the Named Plaintiff, Opt-in Plaintiffs, and Settlement

  Class Members multiplied by the Net Settlement Amount is each individual's

  "Settlement Payment."

Ex. 1, Stipulation § 5(d)(i)-(ii).

Opt-In Plaintiffs will release and discharge the Defendant from all claims, demands,

rights, liabilities, and causes of action arising or occurring through the dates that they opted into

the litigation that they were not properly paid minimum wages under the FLSA and IMWL,

including without limitation claims for minimum wages, liquidated damages, penalties,

attorneys' fees and costs, and expenses. Ex. 1, Stipulation § 6(a).

Settlement Class Members who negotiate their settlement checks will release and

discharge the Defendant from all claims relating to allegations that they were not properly paid minimum wages during the Class Period pursuant to the IMWL, including without limitation claims for minimum wages, penalties, attorneys' fees and costs, and expenses. All Settlement Class Members who have not already opted-into the case and who cash their settlement checks will also be deemed to have opted into the FLSA minimum wage claim by negotiating their settlement checks. *Id.*, § 6(b).

Settlement Class Members who do not negotiate their settlement checks will not release the Defendant from any claims, demands, rights, liabilities, and causes of action arising or occurring during the Class Period, including without limitation any claims that they were not properly paid minimum wages under the FLSA or the IMWL. *Id.*

### B.     Settlement Administration And Distribution

Within seven (7) days of entry of the Order approving the Joint Stipulation of Settlement, Defendant will provide the Settlement Administrator with a list identifying the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members by name, social security number, and last known mailing address. Also within seven (7) days of the Order, Plaintiff's Counsel will provide the Settlement Administrator with a list identifying the Named Plaintiff and Opt-in Plaintiffs by name, phone number, and mailing address, along with a list specifying the allocation of the Net Settlement Amount to the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members. Ex. 1, Stipulation § 8(b). Upon receipt of the data from Defendant, the Settlement Administrator will verify the most recent mailing addresses for Settlement Class Members using the National Change of Address (NCOA) Database, or a comparable database. *Id.*, § 8(c).

Within seven (7) days of the entry of the Order approving the Joint Stipulation, Defendant will deposit $190,000.00 into the Settlement Account, which shall be opened and administered by the Settlement Administrator as a Qualified Settlement Fund ("QSF"). Ex. 1,

Stipulation § 8(d). No later than fourteen (14) days after entry of the Order approving the Joint Stipulation, the Settlement Administrator shall determine the employer's share of payroll employment taxes on the wage portion of the settlement awards to be paid to the Named Plaintiff, Opt-in Plaintiffs and Settlement Class Members and shall communicate such amount to Defendant with a detailed explanation of the calculations. Ex. 1, Stipulation § 8(e). No later than seven (7) days thereafter, Defendant will deposit the employer's share of applicable payroll taxes into the Settlement Account. *Id.* The Settlement Administrator shall thereafter remit and report the applicable portion of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. *Id.*

Within seven (7) days of entry of the Order approving the Joint Stipulation, Defendant will deposit $4,736 into the Settlement Account to pay the Settlement Administration fees. Ex. 1, Stipulation § 8(f).

Within fourteen (14) days after Defendant fully funds the Settlement Account with the $190,000 payment and the amount of the employer's share of payroll taxes, the Settlement Administrator shall issue the settlement checks and notice of settlement to Opt-in Plaintiffs and Class Members. Ex. 1, Stipulation § 8(g).

Any checks that remain uncashed after one hundred and twenty (120) days from the date they are issued by the Settlement Administrator shall be deemed void. Ex. 1, Stipulation § 8(h). The Settlement Administrator will return the funds from any such checks to Defendant within 28 days after the 120-day check cashing deadline. *Id*.

## IV. ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS

Collective actions under the FLSA are fundamentally different than class actions raised under Rule 23. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). The due process

concerns present in Rule 23 class actions are not present in collective actions brought under the FLSA because putative class members to the FLSA collective action must affirmatively join the lawsuit by opting-in, instead of opting-out, in order to be bound by decisions of the Court. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

Courts in this Circuit apply a one-step approach to determine whether an FLSA settlement should be approved. *Nesbitt v. 5 West Hubbard Corp.,* Case No. 18-cv-2644, Order Approving Settlement, ¶ 6, ECF No. 33 (Wood, J.).[3]

## V. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697

---

[3]        *See also*, *Bainter v. Akram Investments*, LLC, No. 17 C 7064, 2018 WL 4943884, at *4 (N.D. Ill, Oct. 9, 2018) (implementing one-step approval process); *Burns v. Respite Care/Care in the Home, Inc.,* 1:17-cv-917 (N.D. Ill. March 1, 2018, ECF No. 42); *Grosscup v. KPW Management, Inc., et al.,* No. 1:16-cv-06501 (N.D. Ill. May 25, 2018, ECF No. 92); *Soto v. Wings R Us Romeoville, Inc.,* No. 15 C 10127, 2018 WL 1875296, at *2 (N.D. Ill. April 16, 2018)(implementing one-step approval process); *Furman v. At Home Stores LLC,* No. 1:16-cv-08190 (N.D. Ill. May 1, 2017) (implementing one-step approval process); *Castillo v. Noodles & Co.,* No. 16-cv-030306, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) (implementing one-step approval process); *Watson v. BMO Financial Corp. and BMO Harris Bank, N.A.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016), ECF Nos. 34, 39 (implementing one-step approval process); *Prena v. BMO Fin. Corp.,* No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (implementing one-step approach); *Murphy v. Diversified Restaurant Holdings, Inc.,* No. 14-cv-3653 (N.D. Ill. Oct. 1, 2015, ECF No. 124) (implementing one-step approach); *Beatty v. Capital One Fin. Corp.,* No. 12 cv 434 (N.D. Ill. Dec. 13, 2012, ECF No. 75), Final Judgment and Order Approving Settlement and Dismissing Action (implementing one-step approach). *See also Bozak v. FedEx Ground Package Sys., Inc.,* 11-cv-738, 2014 WL 3778211 (D. Conn. July 31, 2014) (resolving FLSA settlement with one step and explaining differences between collective actions under Section 216(b) of FLSA and Rule 23 class actions).

(1945)); *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011); *Roberts v. Apple Sauce, Inc.,* No. 3:12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. September 25, 2014). The Court should therefore perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.*

Based on the contested nature of this litigation and the quality of the Settlement, this Court should conclude that this Settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

## A. The Proposed Settlement Is The Product Of Contested Litigation

The Settlement is a result of contested litigation given the fact that the settlement has been reached in the context of this lawsuit. The lawsuit has been pending since December 2018 and was resolved only after the Parties participated in a Settlement Conference with the Court. Ex. 3, Salas Decl. ¶¶ 10, 17.

Moreover, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. As explained above, this case was resolved after written discovery and extensive document production. Defendant produced over 1,000 pages in discovery. Ex. 3, Salas Decl. ¶ 15. For these reasons, the Court should conclude that the proposed Settlement is the product of contested litigation.

**B.     The Proposed Settlement Reflects A Fair And Reasonable Resolution Of A _Bona Fide_ Dispute Between The Parties**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a _bona fide_ dispute between the Parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. Both issues implicated by this second prong of the Court's settlement approval inquiry are also satisfied.

**1.     A _Bona Fide_ Dispute Between the Parties Existed Over Liability**

Plaintiff alleged that Defendant paid him and other similarly-situated commissioned sales representatives pursuant to a draw against commission compensation agreement and that in some work weeks during the prior three years, this compensation structure resulted in Plaintiff and other commissioned sales representatives being paid less than the applicable minimum wage. ECF No. 1, Complaint ¶¶ 3-4. Defendant denied the case was appropriate for class treatment and asserted affirmative defenses.  The Parties disagreed on the number of hours sales representatives worked in a work week and whether the monthly bonuses sales representatives were paid applied to Defendant's minimum wage obligations in the week in which they were paid or over all weeks in the month. Ex. 3, Salas Decl. ¶ 16.

This procedural posture, where Defendant disputed the methodology Plaintiff used to compute damages, the appropriateness of collective action treatment, and vigorously defended its position throughout the litigation, and where the Parties conducted significant discovery, demonstrates a _bona fide_ dispute between the Parties. _Swartz v. D-J Eng'g, Inc_., 2016 WL 633872, 2016 U.S. Dist. LEXIS 20017, at *4 (D. Kan. Feb. 17, 2016).

**2.     The Proposed Settlement is Fair and Reasonable**

In determining whether a FLSA Settlement is fair and reasonable, courts generally

examine four factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) whether the value of immediate settlement outweigh the mere possibility of future relief after protracted litigation; and (4) whether the settlement is deemed fair and reasonable by the Parties. *Bainter,* 2018 WL 4943884, at *2; *Soto,* 2018 WL 1875296, at *1. Each of these factors is satisfied.

### i. The Settlement Was Fairly and Honestly Negotiated

The Settlement was the product of arms' length negotiations among experienced counsel. The Settlement was reached after the Parties engaged in discovery, after Plaintiffs' FLSA claim was certified as a collective action and after the opt-in period expired and after the Parties participated in a settlement conference with the Court. Ex. 3, Salas Decl. ¶¶ 14-17.

### ii. The Ultimate Outcome of the Litigation was Unknown

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's various defenses. Defendant computed the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members were owed a fraction of the amount Plaintiffs computed they were owed. Ex. 3, Salas Decl. ¶ 16. If the litigation had continued, Plaintiffs would have faced obstacles and uncertainties, including the outcome of a motion for decertification, summary judgment, and potentially a trial. Even if Plaintiffs won on the merits, they faced the possibility they would confront appeals.

### iii. The Value of the Settlement is Significant

The benefit that the Plaintiffs will receive from the Settlement as against the maximum they could have received if they had prevailed at trial is substantial.

11

1.      Plaintiffs' Counsel computes that the Plaintiffs' total owed minimum wages amount to $117,405.98. Ex. 3, Salas Decl. ¶ 20. The Net Settlement Fund equals $117,896.14, more than 100% of the minimum wages owed, even *after* the payment of attorney's fees and litigation expenses and all service payments. *Id*.   Opt-In Plaintiffs will receive a maximum payment of $10,051.04 and an average payment of $4,373.36. Settlement Class Members who cash settlement checks will receive a maximum payment of $5,739.10 and an average payment of $1,512.92. *Id*. All Opt-In Plaintiffs and Settlement Class Members will recover a payment equal to approximately 84% of their damages. *Id*.

This is an outstanding result and is more than fair and reasonable. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

### iv.  Plaintiffs' Attorneys and Named Plaintiffs Support the Settlement

Plaintiff's Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Ex. 3, Salas Decl. ¶ 25. Based on Plaintiff's Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Plaintiff's Counsel believes the Settlement is fair and

reasonable. *Id.*, ¶ 26. This factor supports approval of the Settlement. *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, the Named Plaintiff approved the terms of the Settlement. *Id.*, ¶ 27.

In light of the foregoing, the Court should approve the Parties' proposed Settlement of this Action.

## VI.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED

The Joint Stipulation contemplates providing a Service Award to the Named Plaintiff in the amount of $5,000 in recognition of his service to the Opt-in Plaintiffs and Settlement Class Member and in exchange for providing Defendant with a general release of all claims. Ex. 1, Stipulation § 5(c)(ii). This payment is in addition to any payment the Named Plaintiff will receive as his *pro rata* share of the Net Settlement Fund. Ex. 3, Salas Decl. ¶ 24.

Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. See *Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). The role of the Named Plaintiff in this litigation was crucial. Marsh conferred with Class Counsel throughout the case, answered written discovery, produced documents, and attended the Settlement Conference. Ex. 3, Salas Decl. ¶ 12. His efforts strengthened the position of the Class and aided in achieving an excellent result for the Class Members. *Id.*

This service payment comports with service payments recently awarded to Named Plaintiffs in other FLSA actions. *See Nesbitt v. 5 West Hubbard Corp.,* Case No. 18-cv- 2644, Order Approving Settlement ¶ 15, ECF No. 33 (Wood, J.) (approving a total of $5,000 in service awards to 2 Named Plaintiffs in FLSA collective action settlement); *Soto*, 2018 WL 1875296, at *3 (in FLSA settlement, approving service award of $7,500 to the named plaintiff); *Knox v. The*

13

*Jones Group,* No. 15-cv-1738 SEB-TAB, 2017 WL 3834929, at *3 (S.D. Ind. Aug. 31, 2017) (in

FLSA settlement, approving service awards of $7,500 each to two Named Plaintiffs); *Briggs v.*

*PNC Financial Services Group, Inc.,* 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 24, 2016)

at * 3 (approving $12,500 service award each to two plaintiffs in FLSA settlement); *Castillo v.*

*Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *6-8 (N.D. Ill. Dec. 23, 2016)

(approving $10,000 service award each for four named plaintiffs in FLSA wage action).[4]

The requested Service Award in the total amount of $5,000 represent less than 3% of the

Gross Settlement Fund, which is a reasonable percentage. Ex. 3, Salas Decl. ¶ 24; *Reyes v.*

*Buddha-Bar NYC,* No. 08 Civ. 2494, 2009 WL 5841177, at *8, *13 (S.D.N.Y. May 28,

2009) (awards of $7,500 each to three named plaintiffs, representing approximately 3 percent of

the total $710,000 settlement amount, was reasonable).

## VII. THE PAYMENT OF PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES EQUAL TO $66,500.00 SHOULD BE APPROVED AND PLAINTIFFS' LITIGATION EXPENSES IN THE AMOUNT OF $603.86 SHOULD BE APPROVED

The Court should award attorneys' fees as a percentage of the total fund made available

to the Class. When counsel's efforts result in the creation of a common fund, counsel is "entitled

to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S.

472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003)

(creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based

on the equitable notion that those who have benefited from litigation should share in its costs."

*Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860

---

[4]      *See also*, *Koszyk v. Country Fin.*, No. 16 C 3571, 2016 WL 5109196, at *6-7 (N.D. Ill.
Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA
collective action); see also *Lukas v. Advocate*, No. 1:14-cv-2740 (N.D. Ill. June 29, 2016, ECF
150) (approving $15,000 service award to named plaintiff in FLSA wage action); see also 4
Newberg on Class Actions § 11.38, at 11- 80 (citing empirical study from 2006 that found
average award per class representative to be $16,000).

F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014)); *see also Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the trend in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell v. Advantage Sales & Marketing LLC*, No. 1:09-cv-1430, 2012 WL 1424417, at *2 (S.D. Ind. April 24, 2012) (FLSA settlement); *see also Koszyk*, 2016 WL 5109196, at *3-4; *Prena,* 2015 WL 2344949, at *1; *Briggs,* 2016 WL 7018566, at *3; *Castillo*, 2016 WL 7451626, at *4.[5]

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the Settlement releases Opt-in Plaintiffs' statutory claims to fees under the FLSA and state wage and hour laws.[6]

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to

---

[5]  The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.* 243 F.3d 722, 732 (3d Cir. 2001).
[6]  *See, e.g.*, 29 U.S.C. § 216(b).

make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998)); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Second Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

A.      **Analysis of the Market for Legal Services Supports Plaintiffs' Request**

In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in

16

light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" S*utton v. Bernard,* 504 F.3d 688, 692, 693-94 (7th Cir. 2007), *citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.') (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998).

Here, Plaintiffs' Counsel executed a fee arrangement with the Named Plaintiff that entitled Plaintiffs' Counsel to 40% of any pre-trial recovery. Ex. 3, Salas Decl. ¶ 28.  Because the Parties negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs,* 2016 WL 7018566, at *4.  Plaintiffs' Counsel's request is particularly reasonable here, as they seek only 35% of the common fund, rather than the agreed-upon 40% of any recovery contemplated in the fee arrangement.

### B.     The Risk of Non-Payment Supports the Requested Attorneys' Fee Award

Plaintiffs' Counsel's decision to seek the market rate is also reasonable in light of the

significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the litigation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).

Plaintiffs' Counsel took this case on a contingent fee basis and assumed the risk that they would receive *no* fee for their services. Ex. 3, Salas Decl., ¶ 29; *see Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Plaintiffs' Counsel faced significant risk in establishing that collective treatment was appropriate and in proving class liability. As the Seventh Circuit has noted, plaintiff's counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.). These facts support Plaintiffs' Counsel's fee request.

## C. The Results and the Benefits Conferred Upon the Plaintiffs Justify the Requested Award

The benefit the Settlement provides Plaintiffs is excellent. The entire $190,000 that will be deposited into the Settlement Account will be distributed to the Named Plaintiff, Opt-in Plaintiffs, Settlement Class Members and Plaintiffs' Counsel. Ex. 3, Salas Decl. ¶ 19. The Settlement is a non-claims made settlement. *Id.* All Opt-in Plaintiffs and Settlement Class Members will receive a check via U.S. Mail, with no pre-conditions, representing their *pro rata* share of the Net Settlement Amount. *Id.* Settlement Class Members who do not negotiate their settlement checks will not release any of their minimum wage claims. *Id.*

In addition, the payments Named Plaintiff, Opt-In Plaintiffs, and Settlement Class Members will receive are significant. Ex. 3, Salas Decl. ¶ 20. Opt-In Plaintiffs will receive a

18

maximum payment of $10,051.04 and an average payment of $4,373.36. *Id*. Settlement Class Members who cash settlement checks will receive a maximum payment of $5,739.10 and an average payment of $1,512.92. *Id*. All Opt-In Plaintiffs and Settlement Class Members will recover a payment equal to approximately 84% of their gross damages. *Id*. This is an exceptional result by any measure. *See*, *Rotuna v. W. Customer Mgmt. Grp., LLC,* 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010), at *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund and describing recovery of 75% to 25% of claimed wages as "exceptional."); *Dillworth v. Case Farms Processing, Inc.,* 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (awarding one-third of common fund as fee in wage case and describing recovery of one-third of claimed wages as "exceptional.").

Nor will Settlement Class Members be required to provide a general release in order to participate in the Settlement. Settlement Class Members who negotiate their settlement checks will provide Defendant with a limited release of their minimum wage law claims, and Settlement Class Members who do not negotiate their settlement checks will not release any of their claims. Any claim an Opt-in Plaintiff may have other than those asserted or related to this lawsuit remain unaffected. The absence of a general release exemplifies the results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, and the excellent result achieved for Settlement Class Members, Plaintiffs' Counsel is entitled to a reasonable attorneys' fees award of 35% of the Gross Settlement Fund, equal to $66,500.00.

### D. Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check

Plaintiffs' Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"). This is because the recovery for Plaintiffs is substantial, the entire Net Settlement Amount is available to Plaintiffs without the need for them to submit claim forms, and the settlement does not present indicia that it was the product of collusion between the Parties at the expense of Settlement Class Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls," *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009). As explained above, because Plaintiffs' Counsel's substantial work to date has "bought" a significant recovery for Plaintiffs, the Court need not analyze Plaintiffs' Counsel's lodestar.[7]

---

[7] Plaintiffs' Counsel's lodestar exceeds $75,000 through October 9, 2019. Ex. 3, Salas Decl. ¶ 30. This does not include the additional time Plaintiffs' Counsel will spend fulfilling their obligations in the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the Settlement Notice and Settlement Payments, and responding to Settlement Class Members' inquiries. *Id.*

### E. Plaintiff's Litigation Expenses

Plaintiffs' Counsel also seeks to recover $603.86 in Plaintiffs' Litigation Expenses. Ex. 3, Salas Decl. ¶ 31. Plaintiffs' Counsel seek reimbursement for the court filing fee, file set up, research, services fees, and postage and photocopies associated with the issuance of the FLSA Notice. *Id.*

## VIII. CONCLUSION

The Parties reached this Settlement as the result of contested litigation and it resolves a *bona fide* dispute between the Parties. The Parties engaged in lengthy discovery and analysis of pertinent information and resolved the issues between them through arm's length negotiations. The Settlement is fair, reasonable and adequate and resolves a *bone fide* dispute between the Parties for significant monetary relief in a contested matter. For these reasons, the Court should approve the Settlement Agreement.

Dated: October 11, 2019                 Respectfully submitted,

                                             /s/Maureen A. Salas